## Rosenberg v. Rosenberg

*Barbara Wapner Pressman,* for plaintiff.
*Timothy F. Sullivan,* for defendant.

LABRUM, JR., *J.,* April 5, 1984—A complaint in divorce was filed by plaintiff-wife Mary F. McCartney Rosenberg on October 29, 1981, seeking a divorce upon the grounds of adultery, indigni-

ties and irretrievable breakdown of marriage. She also raised alimony pendente lite, equitable distribution, permanent alimony, exclusive possession of marital residence, maintenance of insurance policies, injunctive relief, counsel fees, costs and expenses. The following day, wife filed a petition to protect marital property. Husband was personally served with true and correct copies of the complaint in divorce and petition and rule to protect property on November 6, 1981.

The late Honorable Joseph W. DeFuria subsequently enjoined husband from disposing of, alienating or encumbering his interest in Heritage Datsun until further order of court.

No further action was taken on this case until February 2, 1983, when husband filed a petition to dismiss for lack of prosecution.

In response thereto, wife filed a petition for alimony pendente lite, counsel fees and costs and a petition for leave of court to take discovery. Both petitions were filed on February 16, 1983. A conference was held and an order was entered requiring husband to file answers to plaintiff's supplemental interrogatories on or before March 22, 1983, and further providing that wife was estopped from proceeding on her petition for alimony pendente lite, counsel fees and costs unless she filed a motion for appointment of a general master on or before March 22, 1983.

Husband filed his affidavit of consent on March 9, 1983; wife filed her affidavit of consent on March 31, 1983, together with the motion for appointment of general master for a 201(c) divorce. A master was appointed to make a recommendation to this court with regard to the dissolution of marital status only. Prior to July 1, 1983, Delaware County required that a general master be appointed in *every* divorce case.

On May 20, 1983, wife filed a withdrawal of consent and a motion for appointment of a general master on the grounds of adultery. Two weeks later, wife filed a petition and rule for leave to withdraw consent.

Husband, having learned that wife was attempting to stall the divorce, filed a motion for the appointment of a general master seeking a divorce on the grounds of irretrievable breakdown, pursuant to Pa.R.C.P. 1920.42(a)(1), which provided:

"(a)(1) If a complaint has been filed requesting a divorce on the ground of irretrievable breakdown and both parties have filed an affidavit under section 201(c) of the Divorce Code evidencing consent to the entry of a final decree, the court on motion of either party or its own motion shall review the complaint and affidavits. If in compliance with section 201(c), the court shall enter a final decree."*

In the meanwhile, a hearing was held on the request for temporary alimony, preliminary attorney's fees and costs and an order was entered by the Honorable Howard F. Reed, Jr., disposing of these matters.

On June 10, 1983, an order was signed denying wife's petition for leave to withdraw consent and directing the general master to proceed with a determination of the divorce aspect of the case on the grounds of irretrievable breakdown and/or adultery.

On June 20, 1983, a hearing was held during which time husband and his attorney were present and the master took testimony in regards to the grounds of 201(c). No court reporter was present at the hearing; therefore, no transcript of that hearing

---

* This rule was rescinded January 28, 1983, effective July 1, 1983. New rule 1920.42 was promulgated which provides that no master shall be appointed in no-fault cases.

is available. However, according to the master's report, husband presented testimony at that hearing that the marriage is irretrievably broken.

A second hearing was held on July 12, 1983, during which time wife gave testimony on the grounds of irretrievable breakdown (201c) and adultery (201a2).

In September, 1983, the master filed his report recommending a divorce be granted on the grounds of 201(c) mutual consent and not adultery. Wife filed exceptions thereto, argument was heard by this court and on December 20, 1983, plaintiff's exceptions to master's report and recommendation were overruled and dismissed, the master's recommendation was affirmed and the parties were divorced from the bonds of matrimony. The decree in divorce reserved jurisdiction to dispose of ancillary matters previously raised.

Wife filed an appeal from this court's action of December 20, 1983.

Wife is not contesting a divorce between the parties, only a divorce on the grounds of 201(c), irretrievably breakdown of the marriage. Her position is that she alleged irretrievable breakdown as an alternate count in an attempt to minimize the friction between the parties and therefore, she has the right to change her mind, withdraw that allegation and proceed with "the truth," the grounds of adultery.

Briefly, wife's testimony regarding the 201(c) ground was that she filed her divorce action to protect marital property but that she did not believe the marriage was irretrievably broken. Moreover, she testified that when she subsequently filed her affidavit of consent, the marriage was not irretrievably broken, but she wanted to be agreeable so she filed an affidavit saying that it was. However, later she

wanted to withdraw her affidavit and give testimony on the true ground, adultery. We believe the following testimony best sums up wife's position:

"By Mr. Sullivan:

Q. Mrs. Rosenberg, is it my understanding that you wish to tell it like it is today? In other words, you want to put forth testimony as to the ground of adultery because that's the true ground for this divorce?

A. That's how I feel, yes, that that is the true ground.

Q. It's not a no-fault divorce in your mind? It is a fault divorce in that your husband left you to live with another woman?

A. Yes.

Q. At least that's your allegation?

A. Yes. . .

Q. Mrs. Rosenberg, I'm going to show you another document I obtained from the record papers. It's titled an Affidavit of Consent. Is that your signature?

A. Yes, it is.

Q. And in this document, do you not state that the marriage of plaintiff and defendant is irretrievably broken?

A. Yes.

Q. Did you sign this on or about March 31, 1983?

A. That sounds right.

Q. And is it your testimony that you did not believe that the marriage was irretrievably broken as of March 31, 1983, when you filed this document?

A. When I filed the document, I was doing it to protect marital properties.

Q. In March of '83.

A. Oh, I guess the —.

Q. All right.

A. There was still no type of settlement at that point.

Q. And it is your intention to proceed with the divorce on the ground of adultery today?

A. Yes.

Mr. Sullivan: No further questions."

We have little trouble concluding that wife's position is just incredulous. How can a marriage *not* be irretrievably broken when a husband moves out of the marital property to live with another woman? Mrs. Rosenberg only seeks to ignore the purpose of the Divorce Code. The policy of this Commonwealth as set forth in section 102 of the Divorce Code is to make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience and to give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs. Sections 102(a)(1), (a)(3).

The situation presented in Morrison v. Morrison, 66 Erie Co. L.J. 148 (1983), is similar. In that case, plaintiff-wife argued that she could withdraw the averment that the marriage is irretrievably broken and force the matter to a hearing solely on the found of indignities. The Honorable Jess Jiuliante disagreed with that assertion:

"Throughout the plaintiff's argument on this motion has run a common thread: that plaintiff is somehow 'entitled' to a decree of divorce exclusively on her terms. First, the argument is raised that a finding of indignities is necessary to secure and adequate award of alimony. This court is well aware that marital misconduct is one of the fourteen listed factors to consider in determining an award of alimony under §201(b). However, the grounds for divorce are *not* a factor listed, nor would it be of much relevancy to alimony. Plaintiff will certainly be entitled to introduce evidence of marital misconduct, if

any she has, at a hearing on alimony (to the extent the master can be persuaded of its relevance). Thus, entry of a decree on no-fault grounds will not prejudice any rights plaintiff may have to alimony.

"Next, the plaintiff argues that she is 'entitled' to a decree based on indignities so that she may show it to the world and 'prove' that the dissolution of the marriage was not her fault. This assertion completely ignores one of the stated purposes of the Divorce Code:

"(I)t is the policy of the Commonwealth of Pennsylvania to: . . . (3) give primary consideration to the welfare of the family rather than the vindiction of private rights or the punishment of matrimonial wrongs." Code, §102(a)(3).

"To allow plaintiff to pursue this expensive and time-consuming remedy for the purpose stated above would be tantamount to allowing plaintiff to invoke the power of this court to vindicate a private right.

"We cannot allow plaintiff to circumvent the policy and intent of the Divorce Code by this procedural maneuver. We therefore conclude that an allegation pursuant to §201(a)(6) is equivalent to an allegation under §201(c). Though more specific, the §201-(a)(6) allegation certainly supports a conclusion that the marriage is irretrievably broken." (Emphasis added.)

In Barbara B.S. v. S. Allen S., Allegheny C.P. no. 876 October term 1977, March 5, 1982, defendant-cross plaintiff, S. Allen S., filed a petition to appoint a master to take testimony on the grounds of adultery. The parties had been separated for almost three years.

That case had been the subject of numerous hearings, orders and appeals since its beginning. Judge Lawrence W. Kaplan stated "The marital

horse can quite properly be said to have been beaten to death. There seems to be no purpose to belaboring it further." The court declined to appoint a master and ordered that upon completion of three years living separate and apart, the court would entertain a decree in divorce pursuant to §201(d) of the Divorce Code, with remaining economic claims to be determined thereafter.

Wife's next argument is that there was an agreement between counsel that the divorce would be granted only on the grounds of adultery or adultery and irretrievable breakdown, and not irretrievable breakdown alone, and that the alleged agreement is binding on the court.

We find that the record is void of *any* such agreement between counsel. Moreover, any such agreement would be collusive and barred by the Divorce Code.

Wife attempts to misconstrue this court's order of June 10, 1983, which denied wife's leave to withdraw her affidavit of consent, thereby permitting the master to proceed on wife's motion for dissolution of the marriage on the grounds of 201(c), Husband's motion for dissolution of the marriage on the grounds of 201(c), wife's motion for dissolution of the marriage on the grounds of 201(a)(2), or any one, two or three of the above.

For the above reasons, we dismissed wife's exceptions to the master's report and entered the decree in divorce on December 20, 1983.